UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY<br><br>Defendant. | CIVIL ACTION NO.:<br><br>COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES |

Plaintiff, Zurich American Insurance Company ("ZAIC"), by its attorneys, Coughlin Midlige & Garland LLP, as and for its Complaint for Declaratory Judgment against defendant, Scottsdale Insurance Company ("Scottsdale"), alleges as follows:

## NATURE OF THE ACTION

1. This declaratory judgment action arises from an underlying personal injury action entitled *Fernando Lopez, et al. v. LM Legacy Group, LLC; 412 W 15 Lessee, L.P.; Triton Construction Company, LLC; and Triton Construction and Development LLC*, commenced in the Supreme Court of the State of New York, County of Kings, under Index Number 501617/2020 ("Underlying Action").

2. Sentinel Insurance Company ("Sentinel") issued a general liability policy to Delco Electrical Corporation ("Delco") under Policy Number 10 SBA PA5081, for the policy period from March 17, 2017 to March 17, 2018 ("Sentinel Policy").

3. Additionally, Delco purchased an excess liability policy from Scottsdale under Policy Number NXS0003040, for the policy period from March 17, 2017 to March 17, 2018 ("Scottsdale Policy").

4. Delco entered into a Subcontract Agreement with Triton Construction LLC ("Triton") in which Delco agreed to procure commercial general liability insurance naming Triton and owner entities LM Legacy Group, LLC, and 412 W 15 Lessee, L.P. ("Owners") as additional insureds (the "Subcontract").

5. The alleged accident in the Underlying Action arose from Delco's work pursuant to the Subcontract.

6. Delco's primary insurer, Sentinel, has agreed to provide additional insured coverage to Triton and Owners for the Underlying Action on a primary and non-contributory basis.

7. The Scottsdale Policy provides coverage to Triton and Owners in the Underlying Action as first-layer excess coverage upon exhaustion of the Sentinel Policy.

8. Zurich American Insurance Company ("ZAIC") issued a policy in accordance with a wrap-up program for the subject construction project.

9. ZAIC has repeatedly tendered the indemnity of Triton and Owners in the Underlying Action to Scottsdale.

10. Scottsdale has improperly refused to provide coverage to Owners in the Underlying Action.

11. Scottsdale has also improperly refused to provide coverage to Triton that follows the Sentinel Policy in priority.

12. In this action, ZAIC seeks a declaration that: (i) Triton and Owners are entitled to coverage as an additional insureds under the Scottsdale Policy; (ii) Scottsdale has a duty to indemnify Triton and Owners in the Underlying Action; (iii) the wrap-up exclusion in Scottsdale Policy does not preclude excess coverage as to Triton and the Owners; (iv) that the Scottsdale

Policy provides coverage related to liability from the claim by the plaintiff in the Underlying Action immediately after exhaustion of the Sentinel Policy; and (v) Scottsdale is obligated to reimburse ZAIC for all the costs and fees ZAIC has incurred in bringing the instant action.

## PARTIES

13. Zurich American Insurance Company ("ZAIC") is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196. ZAIC is authorized to transact business and has transacted business in the State of New York.

14. Upon information and belief, Scottsdale Insurance Company ("Scottsdale") is an Ohio corporation engaged in the insurance business, with its principal place of business located in Scottsdale, Arizona. Scottsdale is authorized to engage in the business of insurance in New York and was authorized to issue policies of insurance within New York on and prior to the date of loss.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C. §1332 because there is complete diversity of citizenship between Scottsdale (Citizen of Ohio) and ZAIC (Citizen of New York), and the amount in controversy exceeds $75,000, exclusive of costs.

16. Venue is proper in this district under 28 U.S.C. section 1391(b)(1) because ZAIC is a resident of the Southern District of New York, and under 28 U.S.C. section 1391(b)(2) because a substantial part of the events giving rise to this action occurred in the Southern District of New York.

## THE UNDERLYING ACTION

17. On January 22, 2020, Fernando Lopez ("Plaintiff") commenced an action against Owners in the Supreme Court of the State of New York, Kings County, under Index Number 501617/2020 ("Underlying Action"). A copy of the Plaintiff's filed Summons and Complaint is attached hereto as **Exhibit A**.

18. In the Underlying Action, Plaintiff alleges that on April 18, 2017, that he was injured while working as a Delco employee at a construction site located at 412 West 15th Street, New York, New York ("Premises").

19. ZAIC agreed to defend and to indemnify Owners in the Underlying Action pursuant to the wrap-up policy issued to Triton.

20. Plaintiff's employer, Delco, was not enrolled in the wrap-up program administered by ZAIC.

21. ZAIC thereafter tendered defense and indemnity to Delco's primary insurer, Sentinel.

22. In response, Sentinel eventually agreed to defend and indemnify Delco, Triton and Owners in the Underlying Action.

## THE SUBCONTRACT

23. Prior to Plaintiff's alleged accident, Triton entered into a subcontract agreement with Delco to complete construction work at the subject Premises. (the "Subcontract").

24. Under the Subcontract, Delco agreed to provide Triton and Owners with defense, indemnity and insurance as follows:

> Article 18 - INDEMNITY
>
> 18.1 To the fullest extent permitted by applicable law, the Trade Contractor shall assume entire responsibility and liability for all damages (including purely economic loss) and injury of any nature (including death)

to persons and property, including intangible property, arising out of, or in any manner relating to, the execution of the Trade Work, and the Trade Contractor agrees, at its own expense, to defend (if requested by Triton), indemnify and hold harmless Triton, the Owner, the Lender, and their respective directors, officers, employees, architects, consultants and agents (collectively, the Indemnitees), from all demands, claims, causes of action (even though they may be groundless, false or fraudulently asserted), losses, costs and expenses, including reasonable counsel fees, asserted against any of the Indemnitees, arising out of, or in any manner relating to, the execution of the Trade Work, and whether or not the claim is predicated on the violation of a statutory duty, regulation, ordinance, rule or obligation (provided that the violation arises out of or is in any way connected with the Trade Contractor's performance or lack of performance of the work under the Trade Contract) included, but not limited to, its agents, servants and employees of the Trade Contractor, or of any entity directly or indirectly engaged by the Trade Contractor in connection with the Trade Work. In jurisdictions in which the indemnification provided for in this Article is broader than that allowed by applicable law, this Article should be interpreted as providing the broadest indemnification permitted and should be limited only to the extent necessary to comply with that law. The Trade Contractor shall maintain, at all times, insurance, in the amount set forth in Article 21 (the higher umbrella policy limit shall apply), with the appropriate broad form endorsement, covering the Trade Contractor's obligations assumed under this Article and all other obligations of indemnification and defense assumed under the Trade Contract. The maintenance of this insurance shall not, however, at any time or to any extent, relieve the Trade Contractor from its obligations of indemnification under the various provisions of the Trade Contract.

…

18.3   The Trade Contractor shall, at its own expense, defend (if requested by Triton), indemnify and hold harmless the Indemnitees from any and all demands, claims, costs (including counsel fees and expenses) and damages for injuries of any nature, including damage to the Trade Work, the work of others, or the Project, arising out of, or resulting from, improper or untimely performance by the Trade Contractor of its obligations under the Trade Contract.

18.4   In the event that an Indemnitee is determined to be any percent negligent pursuant to any verdict or judgment, then, in addition to the foregoing, Trade Contractor's obligation to indemnify the Indemnitee for any amount, payment, judgment, settlement, mediation or arbitration award shall extend only to the percentage of negligence of the Trade Contractor's and anyone directly or indirectly engaged or retained by it and anyone else for whose acts the Trade Contractor's is liable. The indemnity obligation under this Article shall not be construed to negate, abridge or reduce any

other right or obligation of indemnity that would otherwise exist as to any person or entity described in this Article. In any and all claims against an Indemnitee by any employee of the Trade Contractor's or anyone directly or indirectly retained or engaged by it or anyone for whose acts it may be liable, the indemnification obligation under this Article shall not be limited by any limitation on the amount or type of damages, compensation or benefits payable by or for Trade Contractor under workers' compensation acts, disability benefit acts or other employee benefit acts. The indemnification obligation under this Article shall not be limited in any way by the amount or type of insurance required to be provided to or for the benefit of any Indemnitee as described in Article 21 of this Trade Contract.

18.5   The obligations of the Trade Contractor under this Article shall survive acceptance of the Trade Work and final payment to the Trade Contractor.

…

## ARTICLE 21

### Insurance

21.0   Triton may implement a Controlled Insurance Program ("CIP") for the Project that will provide Workers' Compensation, Employer's Liability, General Liability and Excess Liability coverages for the trade contractors of every tier that provide direct labor to the Project. Unless you are an ineligible trade contractor, or otherwise advised that you are not being offered CIP coverage, both the CIP Manual and the provisions of this Insurance Article apply. In the event of a conflict in terms, the CIP Manual terms will supersede for those contractors enrolled in the CIP.

**NOTE: This trade is excluded from the CCIP**

21.1   The Trade Contractor [Delco] shall obtain and maintain in force, at its own expense, from the date of award until completion and final acceptance of the Trade Work, insurance coverage against claims, regardless of when asserted (i.e. written on "occurrence" basis, meaning that a claim arising from an event of continuous or repeated exposure to conditions which might result in injury, sickness or death shall be covered whenever asserted), that may arise out of, or result from, the Trade Contractor's operations, the operations of the Trade Contractor's subcontractors and of any other entity directly or indirectly engaged by the Trade Contractor in connection with the Trade Work. The coverage shall also specifically include liability arising from water damage and damage or casualty to the property in the care, custody or control of the Trade Contractor or any of its subcontractors. The insurance shall include, at a minimum, the following:

21.1.1 *Commercial General Liability (CGL)* coverage with limits of insurance not less than $1,000,000 each occurrence and $2,000,000 Annual Aggregate.

a) If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.

b) CGL coverage shall be written on ISO Occurrence form CG 00 01 1093 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, contractual liability to cover liability assumed under this agreement, and personal and advertising injury.

c) Triton, Owner and all other parties who Trade Contractor is required to name as additional insureds by any contract, shall be included as insureds on the CGL, using ISO Additional Insured Endorsement CG 20 20 11 85 or an endorsement providing equivalent or broader coverage to the additional insureds. The coverage provided to the additional insureds under the policy issued to the Trade Contractor shall be at least as broad as the coverage provided to the Trade Contractor under the policy. Coverage for the additional insureds shall apply as primary and non-contributing Insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insureds.

…

21.1.3    *Commercial Umbrella*

a) Umbrella limits must be at least $5,000,000.

b) Umbrella coverage must include as additional insureds all entities that are additional insureds on the CGL.

c) Umbrella coverage for such additional insureds shall apply as primary and Non-Contributing before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured other than the CGL, Auto Liability and Employer's Liability coverages maintained by the Trade Contractor.

…

21.5    Trade Contractor shall include, in its primary and umbrella/excess liability policies, blanket written contractual liability coverage for all indemnity agreement set forth in this Trade Contract, including, but not limited to, the indemnity agreement set forth in Article 18 above.

…

21.9   Any failure by the Trade Contractor or its agent to procure the coverage outlined above shall be considered a material breach of the Trade Contractor's contractual obligations, and Triton and the Owner expressly reserve the right to seek direct remedy against the Trade Contractor and its agent for all costs and expenses incurred as a result of the breach. Direct remedy, as referenced above, shall include, but is not limited to, the withholding of contract payments due to the Trade Contractor under this Trade Contract and any Purchase Order issued in connection therewith.

…

25.   Based upon the above Subcontract provisions, Delco was required to procure primary, non-contributory insurance protecting Triton and the Owners for all liability arising from Delco's work at the subject premises.

## THE SCOTTSDALE POLICY

26.   Upon information and belief, Scottsdale issued an Excess Liability Policy to Delco for a policy period from March 17, 2017 to March 17, 2018 (the "Scottsdale Policy").

27.   Upon information and belief, the Scottsdale Policy provides limits of $10,000,000 each occurrence with an aggregate of $10,000,000.

28.   Upon information and belief, the Scottsdale Policy contains the following pertinent policy language:

***

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".

Other words and phrases that appear in quotation marks in this Coverage Part have special meaning. Refer to Section IV Definitions. Other words and phrases that are not defined under this Coverage Part but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".

The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.

**SECTION I COVERAGES**

1. Insuring Agreement

    a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against

any other suit seeking damages for "injury or damage".

However, we will have no duty to defend the insured against any suit seeking damages for which insurance under this policy does not apply.

At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or suit, for which we have the duty to defend.

But:

    **(1)** The amount we will pay for "ultimate net loss" is limited as described in Section II Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Coverage Part. However, if the policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of

2066911                                    9

> defense expenses, judgments or settlements under this Coverage Part.
>
> b. This insurance applies to "injury or damage" that is subject to an applicable "retained limit". If any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance".
>
> c. If the "controlling underlying insurance" requires, for a particular claim, that the "injury or damage" occur during its policy period in order for that coverage to apply, then this insurance will only apply to that "injury or damage" if it occurs during the policy period of this Coverage Part. If the "controlling underlying insurance" requires that the "event" causing the particular "injury or damage" takes place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that "injury or damage" takes place during the policy period of this Coverage Part.
>
> d. Any additional insured under any policy of "controlling underlying insurance" will automatically be an additional insured under this insurance. If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "controlling underlying insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "controlling underlying insurance".

## SECTION IV. DEFINITIONS

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following definitions apply.

1. "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

2. "Event" means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

3. "Injury or damage" means any injury or damage, covered in the applicable "controlling underlying insurance" arising from an "event".

4. "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.

5. "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

      a.    Settlements, judgments, binding arbitration; or

      b.    Other binding alternate dispute resolution proceeding entered into with our consent.

"Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

***

29.    Upon information and belief, the Scottsdale Policy also contains the following pertinent endorsements:

***

<b>OTHER INSURANCE CONDITION AMENDED</b>

This endorsement modifies insurance under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Under Section III CONDITIONS, paragraph 8. Other Insurance is replaced by the following but only with respect to the Person Or Organization and Project designated in the Schedule below:

8.    Other Insurance

    a.    This insurance is excess over and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. However, this condition does not apply to the Person Or Organization and Project listed in the Schedule below to the extent that valid "controlling underlying insurance" is provided on a primary and non-contributory basis for written contracts, but only with respect to liability because of "injury or damage" caused, in whole or in part, by:

        (1) Your ongoing operations;

        (2) "Your Work" or

        (3) Premises owned by or rented to you.

This insurance will apply on an excess basis for "injury or damage" arising out of the sole negligence of the Person Or Organization designated in the Schedule below.

This Condition will not apply to any insurance specifically written as excess over this Coverage Part.

When this insurance is excess, if no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

b.  When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

## SCHEDULE

**Person or Organization:**

Any Person or organization as required by written contract.

**Project:**

All Projects of the insured, but only to the extent that valid "controlling underlying insurance" is provided on a primary and non-contributory basis, as required by written contract.

***

## CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL EXCESS LIABILITY COVERAGE FORM
SCHEDULE

Description and Location of Operation(s):

ALL LOCATIONS AND OPERATIONS FOR WHICH YOU ARE COVERED UNDER A CONSOLIDATED WRAP-UP OR SIMILAR INSURANCE PROGRAM

The following exclusion is added to paragraph 2. Exclusions of SECTION I COVERAGES:

Insurance provided under this Coverage Part does not apply to:

Consolidated (Wrap-Up) Insurance Program

"Injury or damage" arising out of your operations at the location described in the Schedule of this endorsement, and that is covered by a consolidated (wrap-up) or similar insurance program.

>> This exclusion applies whether or not the consolidated (wrap-up) insurance program:
>
>> (1) Provides coverage identical to that provided by this Coverage Part;
>
>> (2) Has limits adequate to cover all claims.

***

30. Upon information and belief, the Scottsdale Policy provides excess liability insurance for the additional insureds, Triton and Owners, for work done under Delco's subcontract with Triton.

31. Upon information and belief, the "Wrap-Up Exclusion" endorsement above does not preclude excess liability coverage to Triton and Owners for the Underlying Action.

32. Upon information and belief, the term "you" contained in the Scottsdale Policy only refers to the Named Insured, Delco.

33. Upon information and belief, the Sentinel Policy is the "controlling underlying insurance" referred to in the Scottsdale Policy.

34. Upon information and belief, the "Other Insurance" endorsement above does not allow the Scottsdale Policy to be considered excess to all other policies, including the ZAIC Policy.

35. Upon information and belief, the Scottsdale Policy is the first-layer excess liability policy immediately following the exhaustion of the Sentinel Policy.

36. Based upon the above provisions, together with the Subcontract, Triton and Owners are additional insureds under the Scottsdale Policy regarding the claims made against Triton and Owners by the Plaintiff in the Underlying Action.

**CLAIMS CORRESPONDENCE**

37. By way of tender demand letter dated May 3, 2017, ZAIC tendered defense and indemnity to Delco regarding the claims made by Plaintiff Lopez for alleged injuries sustained at the Premises.

38. Upon information and belief, Scottsdale did not respond to the May 3, 2017 tender demand letter by ZAIC to Scottsdale's insured, Delco.

39. After Plaintiff filed the Underlying Action, by way of tender demand letter dated February 26, 2020, ZAIC demanded defense and indemnity from both Sentinel and Scottsdale as to Triton and Owners for the Underlying Action.

40. On or around April 21, 2020, Nationwide E&S Specialty ("Nationwide"), on behalf of Scottsdale, advised ZAIC that they were still investigating and awaiting response from the primary insurer.

41. On behalf of Sentinel, on or about June 4, 2020, the Hartford Insurance Company ("The Hartford") agreed to defend and indemnify Triton in the Underlying Action on a primary and non-contributory basis, without reservation.

42. On or about July 16, 2020, on behalf of Scottsdale, Nationwide agreed to accept Triton's tender, acknowledging the Hartford's agreement to defense and indemnify Triton without reservation.

43. Nationwide did not agree to accept ZAIC's tender as to the Owners in its July 16, 2020 correspondence.

44. On behalf of Sentinel, on or about July 22, 2020, The Hartford agreed to defend and indemnify Owners in the Underlying Action on a primary and non-contributory basis, without reservation.

45. On or about November 5, 2020, Nationwide advised that they were reversing their prior position as to Triton and denied coverage to Triton pursuant to the "Wrap-Up Exclusion" endorsements in the Scottsdale Policy.

46. Nationwide also continued to deny coverage as to Owners in its November 5, 2020 correspondence.

47. On or about December 1, 2020, ZAIC responded to Nationwide's letter, again requesting that Scottsdale provide excess liability coverage to Triton and Owners in the Underlying Action.

48. ZAIC also noted in its correspondence that Delco was not part of the wrap-up insurance program administered by Zurich.

49. By letter dated December 22, 2020, Nationwide responded to ZAIC's letter acknowledging The Hartford's tender acceptance as to Owners, but standing by its position that the "Wrap-Up Exclusion" Endorsement in the Scottsdale Policy precludes coverage to Owners and that even if coverage was not precluded this way, coverage would be excess based on the Other Insurance Endorsement.

50. In this letter, Nationwide no longer states that it will be denying coverage to Triton and instead, acknowledges that Nationwide accepted the tender as to Triton following form with the Sentinel Policy issued by the Hartford.

51. Nationwide also does not raise the Other Insurance Argument as to preclude the follow form status of the Scottsdale Policy as to Triton.

52. Additionally, Nationwide acknowledges that the Sentinel Policy is the "controlling underlying insurance" as to the Scottsdale Policy.

53. On or about July 29, 2021, ZAIC, through its counsel sent Scottsdale a final tender demand letter seeking excess liability insurance for Triton and Owners as additional insureds under the Scottsdale Policy.

54. ZAIC also requested that Scottsdale have its excess policy directly follow the exhaustion of the primary Sentinel Policy.

55. On August 3, 2021, Nationwide responded to ZAIC's request, denying excess coverage as to Owners under the "Wrap-Up Exclusion" Endorsement in the Scottsdale Policy. Nationwide also continues to stand by its position that any coverage would be excess to any other available insurance to Owners based on the Other Insurance Endorsement.

56. In this correspondence, Nationwide once again accepted Triton's tender for excess liability coverage for the Underlying Action.

57. Nationwide's correspondence, however, does not confirm whether Nationwide agrees to provide Triton with excess liability coverage that will be available immediately upon exhaustion of the Sentinel Policy.

58. ZAIC has made multiple efforts to have Scottsdale reconsider its position which have been unsuccessful.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST SCOTTSDALE
### (Declaratory Judgment –Additional Insured Status)

59. Zurich repeats and re-alleges each and every allegation contained in Paragraphs 1 through 58 as if fully set forth herein.

60. Triton is an additional insured under the Scottsdale Policy.

61. Owners are additional insureds under the Scottsdale Policy.

62. The Scottsdale Policy affords additional insured excess liability coverage to Triton and Owners for the claims made in the Underlying Action.

63. To date, Scottsdale has failed to acknowledge its obligation to provide coverage to Owners as an additional insured under the Scottsdale Policy.

64. To date, Scottsdale has failed to confirm its position as to providing Triton excess liability coverage under the Scottsdale Policy, which will be immediately available upon exhaustion of the Sentinel Policy.

65. An actual case or controversy exists between ZAIC and Scottsdale regarding Triton's and Owners' entitlement to excess liability coverage for the Underlying Action under the Scottsdale Policy.

66. A resolution of this dispute is necessary to resolve Scottsdale's obligation to provide excess liability coverage to Triton and Owners with respect to the Underlying Action.

67. Therefore, ZAIC seeks a judicial determination and declaration that Triton and Owners are entitled to excess liability coverage in the Underlying Action as an additional insured under the Scottsdale Policy.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST SCOTTSDALE**
**(Declaratory Judgment – Duty to Indemnify)**

68. ZAIC repeats and re-alleges each and every allegation in Paragraphs 1 through 67 as if fully set forth herein.

69. Pursuant to the terms of the Scottsdale Policy, Scottsdale has an obligation to indemnify Triton and Owners for all amounts for which Triton and Owners become legally obligated to pay as damages because of the bodily injury alleged by Plaintiff in the Underlying Action.

70. To date, Scottsdale has failed to acknowledge its obligation to indemnify Triton and Owners with respect to the Underlying Action.

71. An actual and justiciable controversy exists between ZAIC and Scottsdale regarding Scottsdale's obligation to indemnify Triton and Owners in the Underlying Action.

72. A resolution of this dispute is necessary to resolve Scottsdale's obligation to indemnify Triton and Owners in the Underlying Action.

73. Therefore, ZAIC seeks a judicial determination and declaration that Scottsdale is obligated to indemnify Triton and Owners in the Underlying Action.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST SCOTTSDALE
**(Declaratory Judgment – Priority of Coverage)**

74. ZAIC repeats and re-alleges each and every allegation in Paragraphs 1 through 73 as if fully set forth herein.

75. Pursuant to the terms of the Scottsdale Policy, Scottsdale has an obligation to provide excess liability coverage that follows the "controlling underlying insurance" policy, which is the Sentinel Policy.

76. The Scottsdale Policy is to follow the Sentinel Policy in terms of priority of coverage.

77. The Other Insurance Endorsement in the Scottsdale Policy does not change the fact that the Scottsdale Policy is to be made immediately available to its additional insureds upon exhaustion of the primary Sentinel Policy.

78. To date, Scottsdale has failed to acknowledge its obligation to have its excess policy available to additional insureds immediately upon exhaustion of the Sentinel Policy.

79. Therefore, ZAIC seeks a judicial determination and declaration that Scottsdale is obligated to provide its excess liability policy to Triton and Owners in the Underlying Action immediately upon exhaustion of the Sentinel Policy.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST SCOTTSDALE
**(Declaratory Judgment – Waiver/Estoppel)**

80. ZAIC repeats and re-alleges each and every allegation in Paragraphs 1 through 79 as if fully set forth herein.

81. Scottsdale's insured, Delco, received notice of ZAIC's claim for excess liability coverage on behalf of

82. Scottsdale received notice ZAIC's claim for excess liability coverage on behalf of Triton and Owners in the Underlying Action no later than February 26, 2020.

83. Scottsdale also did not disclaim coverage to Triton and Owners on the basis of the "Wrap-Up Exclusion" Endorsement until November 5, 2020.

84. Scottsdale had an obligation to provide a timely disclaimer of coverage pursuant to the provisions contained in the Scottsdale Policy and New York Law.

85. Scottsdale failed to timely disclaim coverage as a matter of law.

86. Scottsdale has accordingly waived its right to rely and/or is estopped from relying on the "Wrap-Up Exclusion" Endorsements in its coverage position.

87. Therefore, ZAIC seeks a judicial determination and declaration that Scottsdale cannot rely on policy language to disclaim coverage to Triton and/or Owners for the Underlying Action.

**WHEREFORE**, Plaintiff, Zurich American Insurance Company, respectfully requests that the Court enter:

1. On the first cause of action, a judgment declaring that Triton and Owners are additional insureds under the Scottsdale Policy in connection with the Underlying Action;

2. On the second cause of action, a judgment declaring that Scottsdale must indemnify Triton and Owners in the Underlying Action as additional insureds;

3. On the third cause of action, a judgment declaring that Scottsdale must allow the Scottsdale Policy to be available to Triton and Owners as additional insureds in the Underlying Action immediately upon exhaustion of the primary Sentinel Policy;

4. On the fourth cause of action, a judgment declaring that Scottsdale waived its right to rely on policy language in its disclaimer of coverage to Triton and Owners; and

5. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 14, 2022

**COUGHLIN MIDLIGE & GARLAND LLP**

By: *s/ Adam M. Smith*
Adam M. Smith, Esq.
Lisa M. Bonanni, Esq.
Wall Street Plaza
88 Pine Street, 28th Floor
New York, New York 10005
*Attorneys for Plaintiff,*
*Zurich American Insurance Company*