UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>              -against-<br><br>SCOTTSDALE INSURANCE COMPANY,<br><br>                              Defendant. | 22-CV-364 (JGLC)<br><br>**<u>OPINION AND ORDER</u>** |

JESSICA G. L. CLARKE, United States District Judge:

Before the Court are the parties' cross-motions for summary judgment. Plaintiff Zurich American Insurance Company ("Zurich") seeks a declaration that Defendant Scottsdale Insurance Company ("Scottsdale") is obligated to indemnify and has wrongfully denied coverage to Zurich's insureds – Triton Construction Company, LLC ("Triton"), LM Legacy Group, LLC ("LM") and 412 W 15 Lessee, L.P. ("412") (collectively, the "Zurich Insureds") – with respect to a lawsuit pending against the Zurich Insureds in state court. Scottsdale seeks an order dismissing the Complaint and a declaring, *inter alia*, that LM and 412 are not additional insureds under Scottsdale's policy and that it has no duty to indemnify them in the state court action. For the reasons stated herein, Scottsdale's motion is DENIED and Zurich's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The Court sets forth relevant factual background and procedural history.

### A. The Lopez Action

The action underlying this coverage dispute is *Fernando Lopez, et al. v. LM Legacy Group, LLC; 412 W 15 Lessee, L.P.; Triton Construction Company, LLC; and Triton*

*Construction and Development LLC*, Index No. 501617/2020, pending in the Supreme Court of New York, Kings County ("Lopez Action"). ECF No. 51 ¶ 2.

On April 18, 2017, Fernando Lopez ("Lopez"), an employee of Delco Electrical Corp. ("Delco"), Scottsdale's named insured, was working at the construction site located at 412 West 15th Street, New York, New York (the "Project") when he allegedly sustained injuries from a falling cable. *Id*. ¶ 1. On January 22, 2020, Lopez commenced the Lopez Action, bringing claims against the Zurich Insureds under Labor Law §§ 200, 240(1) and 241(6). *Id*. ¶¶ 3, 6. Lopez brought suit against LM and 412 in their capacities as owner and lessee of the premises at 412 West 15th Street and against Triton as the general contractor of the Project. ECF 37–1 ¶¶ 10–14. On January 19, 2022, the Zurich Insureds filed a Third Party Complaint against Delco in the Lopez Action, asserting causes of action for, *inter alia*, contribution, common law indemnity, contractual indemnity and failure to procure insurance. ECF No. 51 ¶¶ 9–11. The Zurich Insureds allege that Delco's negligence caused, in whole or in part, Plaintiff's accident and injuries. *Id*.; *see also* ECF No. 52 at 3.

### B.  The Delco Contract

Triton, the general contractor, issued a Project Manual (the "Project Contract") to Delco, its subcontractor, governing the work on the Project. ECF No. 51 ¶ 14. The Project Contract includes a Trade Contractor Agreement between Delco and Triton dated June 8, 2016. *Id*. ¶¶ 15–16; ECF No. 37-6 (the "Trade Contractor Agreement" or "Delco Contract"); ECF No. 39-23 (same). Under the Delco Contract, Triton subcontracted with Delco to perform electrical work for the Project. *Id*. A Contractor Controlled Insurance Program ("CCIP" or "CIP"), implemented by Triton, existed at the Project when the accident involving Lopez allegedly occurred. ECF No. 52 at 1; ECF No. 46 ¶ 103. A CCIP is a type of "wrap-up" insurance coverage, usually obtained

2

by the general contractor, that covers multiple parties working on a single project under one policy. ECF No. 52 at 3 n.5. The parties dispute whether Delco was enrolled in or covered by the relevant CCIP with respect to its work on the Project. ECF No. 41 ¶ 45.

The Delco Contract incorporates into its provisions contract documents (the "Contract Documents") as provided below:

> **1. The Contract Documents**. The Contract Documents consist of the Contract and all plans, specifications, general, special, supplementary conditions, addenda, modifications, and other documents incorporated into the Contract all addenda, this Trade Contract, modifications and change orders to the Trade Contract, Architect's Clarifications, Triton's Clarifications and Triton's attached Trade General Conditions and Project Manual. The Contract Documents also include the other documents identified in Exhibit I to this Trade Contract. These Contract Documents are incorporated into, and are fully a part of, this Trade Contract.

ECF No. 51 ¶ 18.

Under the Delco Contract, Delco agreed to procure commercial general liability insurance ("CGL") that named Triton and 15th Street Holdco, LP ("FSHL") as additional insureds. *Id*. ¶ 26. FSHL is identified as "Owner" under the Delco Contract. *Id*. ¶¶ 21–22. The Delco Contract required that Triton and FSHL, and all other parties who Delco was required to name as additional insureds by any contract, be included as insureds on the CGL coverage that Delco was required to procure. *Id*.¶ 26. The parties disagree whether the Delco Contract required Delco to procure CGL coverage for LM and 412 as additional insureds. ECF No. 41 ¶ 21. Delco agreed to procure CGL insurance coverage against claims, regardless of when asserted, that may arise out of, or result from, Delco's operations, the operations of the Delco subcontractors and of any other entity directly or indirectly engaged by Delco "in connection with the Trade Work." ECF No. 51 ¶ 26; Delco Contract at ZURICH001452–53. Delco also agreed to procure commercial umbrella insurance, which must include as additional insureds all entities that are

additional insureds on the CGL, and provide this coverage as primary and noncontributing. ECF No. 51 ¶ 26; Delco Contract at ZURICH001454–55.

The CCIP Manual included in the Delco Contract requires that all of Triton's contractors, including Delco, procure insurance coverage for their work on the Project. Delco Contract at ZURICH001518–23. Contractors enrolled in Triton's CCIP are covered by the CCIP with respect to onsite activities, but all contractors must provide proof of coverage for offsite activities. *Id*. The CCIP manual provides Sample Certificates of Insurance for contractors to submit proof of insurance, with separate forms for contractors enrolled and not enrolled in the CCIP. *Id*. at ZURICH001518. All forms provide that "Project Owner entities," including LM and 412, "shall be covered as additional insureds, on a primary and non-contributory basis" on such insurance. *Id*. at ZURICH001532–39.

Zurich submits that the Delco Contract includes a document entitled "Exhibit B Requirements." ECF No. 52 at 5. The Exhibit B Requirements state that Triton "shall and cause its subcontractors to, at its own cost and expense, obtain and keep in full force and effect the insurance required herein . . . . This coverage shall be required . . . for onsite work when the subcontractor is not enrolled and insured by the CCIP." ECF No. 51 ¶ 27; Delco Contract at ZURICH001632. The Exhibit B Requirements include a "Named Insured List for Triton CCIP." *Id*. ¶ 28. Zurich submits that the Exhibit B Requirements require Delco to name the "Owners" as additional insureds. ECF No. 52 at 5. In the "Named Insured List for Triton CCIP," 412 is included as "Owner Interest in Ground Lease." ECF No. 51 ¶ 29. LM is included on the list under "Additional Insured List for Triton CCIP" as a "Ground Lessor." *Id*. Zurich submits that the Exhibit B Requirements require Delco to name 412 and LM as additional insureds under its procured insurance policies for its work on the Project. ECF No. 44 at 9.

Scottsdale disputes whether the Exhibit B Requirements are part of the Project Contract because the Exhibit B Requirements are not listed on the cover page of the Project Manual and its pages do not bear a signature or initials. ECF No. 51 ¶ 14 n.2; ECF No. 53 at 2–3.

### C.  The Zurich Policy

Zurich issued a CGL policy to Triton effective from July 17, 2015 to July 17, 2020 (the "Zurich Policy"). ECF No. 51 ¶ 31. The Zurich Policy included as named insureds contractors enrolled in the CCIP for which the Zurich Policy was provided. *Id*. ¶¶ 33, 36; ECF 53 at 3. The Zurich Policy contains "other insurance" language noting that it is "excess over . . . any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." ECF No. 51 ¶ 35.

### D.  The Sentinel Policy

Sentinel Insurance Company, Limited ("Sentinel"), a subsidiary of the Hartford Insurance Company ("The Hartford"), issued a Spectrum Business Owner's policy to Delco, for the policy period from March 17, 2017 to March 17, 2018 (the "Sentinel Policy"). *Id*. ¶ 37; ECF No. 46 ¶ 135.

The Sentinel Policy provides that parties are additional insureds where Delco agreed, in a written contract, that said party be added as an additional insured on the Sentinel policy. *Id*. ¶ 38. This coverage only applies where the injury or damage was caused, in whole or in part, by Delco's acts or omissions in the performance of Delco's ongoing operations. *Id*. The Sentinel Policy provides primary coverage where Delco agreed in a written contract that the Sentinel Policy is primary. *Id*. Triton is named as an additional insured under the Sentinel Policy. *Id*. ¶ 40.

### E.  The Scottsdale Policy

Delco also purchased an excess liability policy from Scottsdale (operating under Nationwide E&S Specialty or "Nationwide," who acted on behalf of Scottsdale in pre-litigation claims correspondence), for the policy period from March 17, 2017 to March 17, 2018 (the "Scottsdale Policy"). ECF No. 51 ¶¶ 41, 50, 68; ECF No. 46 ¶ 133. The Scottsdale Policy follows form[1] to the "controlling underlying insurance," which is the Sentinel Policy. ECF No. 51 ¶¶ 43–44. Any additional insured under the Sentinel Policy is automatically an additional insured under the Scottsdale Policy. *Id*. To the extent that the policy provisions conflict, the provisions of the Scottsdale Policy apply and are not broader than those provided by the Sentinel Policy. *Id*. ¶ 43. The Scottsdale Policy is excess over all other insurance except with respect to an organization or project for which "controlling underlying insurance" is provided for on a primary and non-contributory basis by written contract and where the liability stems from injury or damages caused, in whole or in part, by Delco's operations. *Id*. ¶¶ 43, 45.

The Scottsdale Policy contains a "'Wrap-Up' Exclusion," (the "Wrap-Up Exclusion") which excludes from coverage claims of injury or damage arising out of operations for which Delco is "covered under a consolidated (wrap-up) or similar insurance program," regardless of whether that wrap-up insurance provides identical coverage to the Scottsdale Policy or has limits adequate to cover all claims. *Id*. ¶ 46. The parties dispute whether Delco was enrolled in the CCIP, the wrap-up insurance for the Project, at the time of the alleged accident involving Lopez. ECF No. 41 ¶ 45. The Scottsdale Policy was in full force and effect at the date of the alleged accident in the Lopez Action. ECF No. 51 ¶ 75.

---

[1] *See infra*, Discussion Section I.

### F.  Pre-Litigation Claims Correspondence

On March 20, 2020, Zurich demanded defense and indemnity in the Lopez Action from Scottsdale with respect to Triton, LM and 412. *Id*. ¶ 50. On July 16, 2020, Nationwide (on behalf of Scottsdale) agreed that Triton is an additional insured under the Scottsdale Policy, and agreed to provide coverage with respect to the Lopez Action, but stated that this coverage "is excess to any other collectible insurance available to the insured or any potential additional insured." *Id*. ¶ 54. On July 22, 2020, Sentinel accepted Zurich's request for defense and indemnification on behalf of Triton, LM and 412, and agreed to provide LM and 412 with additional insured coverage under the Sentinel Policy on a primary basis. *Id*. ¶ 55; ECF No. 37-16.

On October 26, 2020, Nationwide asked Zurich if there was a wrap-up policy available on the Project. ECF No. 51 ¶ 56. Later that day, Zurich confirmed that there was a wrap-up policy for the project and, in response, Nationwide requested information from Zurich as to which parties were enrolled in the wrap-up policy. *Id*. ¶¶ 57–58. On November 2, 2020, Nationwide followed up with Zurich on this request, and the next day Zurich responded that it was "working on it." *Id*. ¶¶ 59–60. On November 5, 2020, Nationwide disclaimed coverage to LM and 412 based on the Wrap-Up Exclusion. *Id*. ¶ 61.

### G.  Procedural History

On January 14, 2022, Zurich filed the instant declaratory judgment action. ECF No. 1. On May 12, 2022, Zurich voluntarily dismissed this action with prejudice with respect to Sentinel. ECF No. 24; ECF No. 51 ¶ 69 n.4. Discovery in this matter closed on March 24, 2023, and the parties subsequently filed the instant cross motions for summary judgment. ECF Nos. 30, 32 and 39.

Zurich seeks a declaration that, under the Scottsdale Policy: (1) Triton is an additional insured; (2) LM and 412 are additional insureds; (3) the Wrap-Up Exclusion does not provide a basis for disclaiming coverage of LM and 412 and/or Scottsdale is estopped from relying on the Wrap-Up Exclusion; and (4) Scottsdale owes LM and 412 primary and non-contributory coverage upon exhaustion of the Sentinel Policy. ECF No. 44 at 17.

Scottsdale seeks an order dismissing Zurich's Complaint and declaring, with respect to the Scottsdale Policy, that (1) LM and 412 are not entitled to coverage as additional insureds and thus Scottsdale has no duty to indemnify them in the Lopez action; and (2) priority of coverage is not ripe for determination.[2] ECF No. 53 at 2.

## LEGAL STANDARD

The Court sets forth the legal standards governing the motions for summary judgment and interpretation of insurance policies under New York law.

## I.    Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 322. If the movant meets her initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to

---

[2] Scottsdale also seeks a declaration that it is not obligated to reimburse Zurich for attorneys' fees and costs in the action. ECF No. 53 at 2. However, "Zurich never argued for or sought reimbursement of attorney's fees for the declaratory judgment action" and "Zurich understands that these fees are not subject to reimbursement in this matter." ECF No. 44 at 18 n.18. Thus, there is no "actual controversy" for the Court to resolve with respect to this issue. *See* 28 U.S.C. § 2201(a); *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 91–93 (2d Cir. 2023) (Declaratory Judgment Act only provides a remedy for actual controversies).

avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citation omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports her motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)). "The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences in favor of the non-moving party.

*Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020); *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017).

## II.    New York Law on Insurance Policy Interpretation

In New York, insurance policies are interpreted by traditional rules of contract interpretation. *See Daileader v. Certain Underwriters at Lloyd's London - Syndicate 1861*, No. 670 F. Supp. 3d 12, 28 (S.D.N.Y. 2023), *aff'd sub nom. Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, No. 23-CV-690, 2023 WL 7648381 (2d Cir. Nov. 15, 2023). Under New York law, "it is well established that courts determining a dispute over insurance coverage must first look to the language of the policy." *Id.* (cleaned up). "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22-CV-4629 (LGS), 2023 WL 3647370, at *3 (S.D.N.Y. May 25, 2023) (internal citation omitted). "Determining whether a contract is ambiguous is an issue of law for the courts to decide" and "provisions in a contract are not ambiguous merely because the parties interpret them differently." *Id.* at *4 (internal citations omitted). "Ambiguities in contract language must be construed in favor of the insured, but a contract is not ambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion." *Daileader*, 670 F. Supp. 3d at 28 (cleaned up); *see also Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 129 (2d Cir. 2006) (holding that under New York law, if an insurance policy is ambiguous, the policies' provisions are construed in favor of finding coverage for the insured). The Court interprets the language of insurance contracts "according to common

speech and consistent with the reasonable expectation of the average insured." *Daileader*, 670 F. Supp. 3d at 28 (internal citation omitted).

## DISCUSSION

The Court finds that Zurich is entitled to judgment declaring that: (1) LM and 412 qualify as additional insureds under the Scottsdale Policy; and (2) Scottsdale is not entitled to rely on the Wrap-Up Exclusion in the Scottsdale Policy to disclaim coverage of LM and 412. The Court finds there is no actual controversy ripe for declaratory judgment with respect to: (1) attorneys' fees and costs; (2) Triton's status as an additional insured under the Scottsdale Policy; and (3) priority of coverage, at this juncture.

## I.      LM and 412 Qualify as Additional Insureds Under the Scottsdale Policy

Zurich seeks a declaration that LM and 412 qualify as additional insureds under the Scottsdale Policy. Scottsdale seeks a declaration that LM and 412 are not entitled to such coverage. The Scottsdale Policy follows form to the Sentinel Policy such that any additional insured under the Sentinel Policy is automatically an additional insured under the Scottsdale Policy. ECF No. 51 ¶¶ 43–44. The Sentinel Policy provides that parties are additional insureds where Delco agreed, in a written contract, that said party be added as an additional insured on the Sentinel Policy. *Id.* ¶ 38.

A follows form policy means that "if the underlying policy covers certain conduct, the excess policy does as well." *Jin Ming Chen v. Insurance Company of the State of Pennsylvania*, 163 N.E.3d 447, 452 (N.Y. 2020); *see also Aspen Specialty Ins. Co. v. RLI Ins. Co., Inc.*, 145 N.Y.S.3d 50, 56 (1st Dept 2021). It is undisputed that Sentinel has taken the position that Triton, LM and 412 are all additional insureds under the Sentinel Policy and has agreed to provide them additional insured coverage under the Sentinel Policy on a primary basis. ECF No. 51 ¶ 55; ECF

No. 37-16; ECF No. 53 at 10; ECF No. 47 at 4. Scottsdale maintains that Sentinel's decision to defend and indemnify LM and 412 was mistaken. ECF No. 53 at 14; ECF No. 47 at 4. Although the Scottsdale Policy follows form to the Sentinel Policy, Sentinel's coverage decision does not bind Scottsdale. *See Daileader*, 670 F. Supp. 3d at 33–34 (collecting cases finding excess insurer is free to construe language in follows form policy differently than the primary insurer). Thus, the Court will determine whether LM and 412 are additional insureds under the Scottsdale Policy based on its interpretation of the relevant contracts.

Nationwide (on behalf of Scottsdale) has already determined that Triton is an additional insured under the Scottsdale Policy and agreed to provide Triton coverage with respect to the Lopez Action. ECF No. 51 ¶ 54; ECF No. 37-15. Nonetheless, Scottsdale quibbles in its 56.1 response, but does not argue in its memoranda of law, that the Sentinel Policy only explicitly named Triton as an additional insured with respect to operations on a site in Garden City, New York that is separate from the Project at 412 West 15th Street. ECF No. 41 ¶ 32. Despite Scottsdale's implication that its coverage obligations with respect to Triton do not include work on the Project, Scottsdale has already agreed to provide Triton coverage with respect to the Lopez Action. ECF No. 51 ¶ 54; ECF No. 37-15.

Moreover, Scottsdale does not dispute that the terms of the Delco Contract required Delco to name Triton (and FSHL) as additional insureds on the insurances policies Delco procured. *See* ECF No. 53 at 10; ECF No. 47 at 3 ("Delco was only required to name Triton and 15th Street Holdco, L.P. as additional insureds."). If Delco were required to name Triton as an additional insured with respect to the insurance it procured for the Project (*i.e.* the Zurich and Sentinel Policies), then it follows that Triton qualifies as an additional insured under the Sentinel Policy with respect to the Project and thus, following form, under the Scottsdale Policy.

However, because Scottsdale has already agreed to provide Triton coverage with respect to the Lopez Action, there is no "actual controversy" for the Court to resolve with respect to Triton's status as an additional insured under the Scottsdale Policy. *See* 28 U.S.C. § 2201(a); *see also Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 91–93 (2d Cir. 2023) (Declaratory Judgment Act only provides a remedy for actual controversies).

Scottsdale cursorily attempts to call into question whether the copy of the Delco Contract in the record has been properly authenticated, although it abandons this argument in reply. ECF No. 53 at 10; *Topley v. SemGroup Corp.*, No. 19-CV-10412 (RA), 2021 WL 1172622, at *8 (S.D.N.Y. Mar. 29, 2021) (deeming argument abandoned where reply brief is silent). Scottsdale's insinuations as to the authenticity of the Delco Contract strain credulity because Scottsdale has already relied on the contract in accepting coverage for Triton in the Lopez Action. *See* ECF No. 37-15. Nonetheless, the Court briefly considers Scottsdale's objection.

In a one sentence objection, Scottsdale appears to argue that Adam M. Smith, Esq., counsel for Zurich, is not a competent affiant to attest to the authenticity of the contract. ECF No. 53 at 10. Scottsdale's declarant Lorin A. Donnelly, Esq. submitted an identical copy of the contract (*see* ECF Nos. 37-6 and 39-23), calling it "a copy of the alleged Contract between Triton and Delco." ECF No. 39 ¶ 24.

At summary judgment, "records may be properly considered in the absence of any reasons shown to suggest that they are not genuine." *Castagna v. Sansom*, No. 21-CV-1663 (JAM), 2024 WL 197462, at *1 n.1 (D. Conn. Jan. 18, 2024) (citing *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90, 93–94 (2d Cir. 2019)). "[A] document is properly authenticated if a reasonable juror could find in favor of authenticity." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (internal citation omitted). "The bar for authentication of

evidence is not particularly high and the proponent need not rule out all possibilities inconsistent with authenticity." *Hoffman v. Walmart, Inc.*, No. 21-CV-1729 (SVN), 2023 WL 6929208, at *4 (D. Conn. Oct. 19, 2023) (cleaned up). The 2010 amendments to Federal Rule of Civil Procedure 56 removed the "unequivocal requirement" that documents submitted in connection with summary judgment be authenticated. *Sanmina Corp. v. Dialight plc*, No. 19-CV-11710 (KPF), 2023 WL 9022882, at *6 (S.D.N.Y. Dec. 29, 2023) (internal citation omitted). As amended, Rule 56 merely requires that supporting documents "be in a form that, if authenticated, could be admissible at trial." *Id*. (citing Fed. R. Civ. P. 56(c)(2)). Declarations of attorneys frequently function as vehicles to introduce evidence produced in discovery into the record and may suffice to authenticate documents at the summary judgment stage. *Id*. (internal citation omitted).

Here, Scottsdale "does not give any explanation for its objection[] beyond merely stating in conclusory fashion" that the exhibit is not in admissible form. *See id*. Based on Smith's declaration, and the questionable and conclusory basis of Scottsdale's argument, abandoned in reply, the Court properly considers the Delco Contract in light of "Rule 56(c)'s low bar for authentication." *Id*.

The Sentinel Policy, to which the Scottsdale Policy follows form, provides that parties are additional insureds where Delco agreed, in a written contract, that said party be added as an additional insured on the Sentinel Policy. The Court finds that LM and 412 qualify as additional insureds under the Scottsdale Policy because, for the reasons that follow, the Delco Contract requires that LM and 412 be added as additional insureds under the Sentinel Policy.

The Delco Contract provides that "Triton, Owner and all other parties who [Delco] is required to name as additional insureds by any contract, shall be included as insureds on the CGL." Delco Contract at ZURICH001453. The "Owner" is defined as FSHL. *Id*. at

ZURICH001430. Based on the foregoing, Scottsdale argues that the Delco Contract only required that Delco name Triton and FSHL – not 412 and LM in their capacities as owner and lessee of the premises – as additional insureds on Delco's CGL and umbrella policies, *i.e.*, the Sentinel Policy (and the Zurich Policy). ECF No. 47 at 2; ECF No. 53 at 11–12.

The CCIP Manual included in the Delco Contract requires that all of Triton's contractors, including Delco, procure insurance coverage for their work on the Project. Delco Contract at ZURICH001518–23. Contractors enrolled in Triton's CCIP are covered by the CCIP with respect to onsite activities, but all contractors must provide proof of coverage for offsite activities. *Id*. The CCIP Manual provides Sample Certificates of Insurance for contractors to submit proof of insurance, with separate forms for contractors enrolled and not enrolled in the CCIP. *Id*. at ZURICH001518. All forms provide that "Project Owner entities," including LM and 412, "shall be covered as additional insureds, on a primary and non-contributory basis" on such insurance. *Id*. at ZURICH001532–39. These provisions indicate Delco's understanding and agreement that LM and 412 would be included as additional insureds on the coverage that Delco was required to procure. This understanding makes sense considering the roles of LM and 412 as owner and lessee of the premises of the Project. The "Exhibit B Requirements" appear to set forth similar requirements, but the Court need not rely on these provisions given the foregoing conclusion and Scottsdale's dispute as to whether the "Exhibit B Requirements" are part of the Delco Contract. ECF No. 53 at 11; ECF No. 47 at 3. Because Delco agreed to include LM and 412 on the coverage that it was required to procure, LM and 412 qualify as additional insureds under the Sentinel Policy and, following form, under the Scottsdale Policy.

**II.    The Wrap-Up Exclusion Does Not Apply**

Having determined that LM and 412 qualify as additional insureds under the Scottsdale Policy, the Court turns to whether the Wrap-Up Exclusion nonetheless excludes LM and 412 from coverage under the Scottsdale Policy. Nationwide, on behalf of Scottsdale, denied coverage to LM and 412 based on the Wrap-Up Exclusion. ECF No. 51 ¶ 61.

The Wrap-Up Exclusion in the Scottsdale Policy excludes from coverage claims of injury or damage arising out of operations for which "YOU ARE COVERED UNDER A CONSOLIDATED (WRAP-UP) OR SIMILAR INSURANCE PROGRAM." *Id*. ¶ 46. The Scottsdale Policy defines "You" to mean the "Named Insured," which is Delco. *Id.*; ECF No. 39-8 at SD000013. Here, the relevant wrap-up policy is Triton's CCIP. Scottsdale argues that it is entitled to exclude LM and 412 from coverage because LM and 412 were enrolled in the CCIP and Zurich has not proven that Delco was <u>not</u> enrolled in the CCIP at the time of the alleged accident. ECF No. 47 at 7–9; ECF No. 53 at 16–19. This argument fails for several reasons.

First, Scottsdale's position is inconsistent. Scottsdale has admitted that Triton is an additional insured under the Scottsdale Policy even though Triton was covered by the CCIP that it managed. *See* Delco Contract at ZURICH001522 ("The CIP will be for the benefit of Triton . . . ."). Scottsdale does not explain why Triton qualifies as an additional insured, notwithstanding its coverage by the CCIP, but LM and 412 may not qualify. It also bears noting, although Sentinel's determinations do not bind Scottsdale, that the Sentinel Policy contains an identical wrap-up exclusion and Sentinel nonetheless agreed to provide coverage to LM and 412 without reservation. *See* ECF Nos. 37-14 and 37-16.

Second, Scottsdale misreads the plain text of the Wrap-Up Exclusion, which only applies to "ALL LOCATIONS AND OPERATIONS FOR WHICH YOU [DELCO] ARE COVERED

UNDER A CONSOLIDATED WRAP-UP OR SIMILAR INSURANCE PROGRAM." ECF No. 51 ¶ 46. Despite this clear language, Scottsdale argues that the Wrap-Up Exclusion "does not require that Delco itself be enrolled" in the CCIP. ECF No. 53 at 18. Scottsdale is incorrect. Coverage under the CCIP only accrues to "[e]nrolled contractors." Delco Contract at ZURICH001522. Delco was not covered by that wrap-up program – and neither were Delco's operations at the Project – if Delco was not enrolled in the CCIP. Whether LM and 412 were enrolled in the CCIP does not determine whether Delco was covered by it. The Wrap-Up Exclusion hinges on whether <u>Delco's</u> operations were covered by a wrap-up program, not whether other parties involved in the Project may have been covered by the CCIP. Scottsdale also points to language in the Wrap-Up Exclusion stating that "Insurance provided under this Coverage Part does not apply to . . . 'Injury or damage' arising out of your operations at the location described in the Schedule of this endorsement, and that is covered by a consolidated (wrap-up) or similar insurance program." ECF No. 51 ¶ 46; ECF No. 53 at 18; ECF No. 47 at 8. The "location described in the Schedule of this endorsement" is "ALL LOCATIONS AND OPERATIONS FOR WHICH YOU [DELCO] ARE COVERED UNDER A CONSOLIDATED WRAP-UP OR SIMILAR INSURANCE PROGRAM." ECF No. 39-8 at 54. Thus, this language does not expand the scope of the Wrap-Up Exclusion to apply to locations or operations for which <u>Delco</u> is not covered by a wrap-up or similar program.

Third, Scottsdale misallocates the burden of proof. To exclude certain coverage from its policy obligations, an insurer must do so "in clear and unmistakable language." *JMG Improvements Inc. v. Arch Specialty Ins. Co.*, No. 20-CV-2882 (RA), 2022 WL 16700086, at *4 (S.D.N.Y. Nov. 3, 2022), *appeal withdrawn*, No. 22-3067, 2023 WL 2315454 (2d Cir. Feb. 24, 2023) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)). "Exclusions

'are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.'" *Id*. (quoting *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 877 (N.Y. 2009)). "Before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." *Daileader*, 670 F. Supp. 3d at 29 (quoting *Seaboard*, 476 N.E.2d at 275). "Generally, the initial burden rests on the 'insured to establish coverage' and on 'the insurer to prove that an exclusion in the policy applies to defeat coverage.'" *JMG Improvements*, 2022 WL 16700086, at *4 (quoting *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 690 (N.Y. 2002)).

Scottsdale improperly attempts to turn the burden of the insurer on its head. Zurich has already demonstrated that LM and 412 qualify as additional insureds under the Scottsdale Policy. Zurich represents that Delco was <u>not</u> enrolled in the existing CCIP for the Project at the time of the alleged accident, *see* ECF No. 41 ¶ 45, and has produced multiple records to substantiate that representation. *See* ECF No. 44 at 6. Nonetheless, Scottsdale argues that it is entitled to apply the Wrap-up Exclusion to exclude LM and 412 from coverage because Zurich has not proven that Delco was <u>not</u> enrolled in the CCIP at the time of the alleged accident. ECF No. 47 at 7–8; ECF No. 53 at 16–17. An argument that the insured has not proven a negative – where the insured has supplied ample, uncontradicted evidence supporting its factual position – does not manufacture a dispute of fact on summary judgment and falls woefully short of the insurer's burden "to prove that an exclusion in the policy applies to defeat coverage." *JMG Improvements*, 2022 WL 16700086, at *4 (quoting *ConEd*, 774 N.E.2d at 690).

Accordingly, Scottsdale is not entitled to rely on the Wrap-Up Exclusion to disclaim coverage of LM and 412. Having resolved this issue on its merits, the Court need not determine whether principles of estoppel prevent Scottsdale from relying on the Wrap-Up Exclusion. For the reasons stated in Sections I and II, Scottsdale is also not entitled to a declaration that it has no duty to indemnify LM and 412 in the Lopez Action.

### III.    Priority of Coverage

Zurich seeks a declaration that the Scottsdale Policy is primary and non-contributory to the Zurich Policy, *i.e.*, that Scottsdale is required to defend and indemnify the Zurich Insureds before Zurich is required to do so. ECF No. 52 at 17; ECF No. 44 at 16. There is no dispute that the Sentinel Policy is primary to both the Zurich Policy and the Scottsdale Policy, but the parties disagree as to the priority between the Zurich Policy and the Scottsdale Policy.

Under New York law, priority of coverage analysis begins with "review and consideration of the provisions of all of the relevant policies at issue to determine the priority among them, including an assessment of the other insurance clauses." *Tech. Ins. Co., Inc. v. Philadelphia Indem. Ins. Co.*, 642 F. Supp. 3d 445, 472 (S.D.N.Y. 2022) (internal citation and quotation marks omitted); *Travelers Prop. Cas. Co. of Am. v. Hudson Excess Ins. Co.*, 660 F. Supp. 3d 187, 194 (S.D.N.Y. 2023) (same). "Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage . . . priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance' clauses." *Tech. Ins. Co., Inc.*, 642 F. Supp. 3d at 472 (internal citation omitted).

Here, the Zurich Policy and the Scottsdale Policy both contain "other insurance" clauses. The Zurich Policy's "other insurance" clause provides that "[t]his insurance is primary except when Paragraph b. below applies." ECF No. 51 ¶ 35. Paragraph b. provides, in relevant part, that

"[t]his insurance is excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." *Id*. The Scottsdale Policy's "other insurance" clause provides that "this Insurance is excess over and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis." *Id*. ¶ 45. However, "this condition does not apply" to Delco "to the extent that valid 'controlling underlying insurance' is provided on a primary and non-contributory basis for written contracts, but only with respect to liability because of 'injury or damage' caused, in whole or in part, by" Delco's ongoing operations or work. *Id*. In short, the Zurich Policy is excess over other *primary* insurance and the Scottsdale Policy is excess over *all* other insurance unless the foregoing exception applies.

Scottsdale argues that priority of coverage is not ripe for adjudication because: (1) the Sentinel Policy has not yet been exhausted; and (2) there has been no determination of proximate cause in the Lopez Action. ECF No. 53 at 28; ECF No. 47 at 9–10.

To establish jurisdiction in a declaratory judgment action, a party must show that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018). In evaluating whether to hear declaratory judgment actions, courts in this Circuit often look to "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). The "party seeking a declaratory judgment bears the burden of proving that

the district court has jurisdiction." *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (per curiam) (internal citation omitted).

With respect to ripeness in the context of insurance disputes, "that the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action; instead, courts focus on the practical likelihood that the contingencies will occur to determine whether there is a substantial controversy." *Falls Lake Nat. Ins. Comp. v. Nexus Builders Corp., et al.*, No. 21-CV-1403 (RA), 2022 WL 992714, at *3 (S.D.N.Y. Mar. 31, 2022) (internal citation and quotation marks omitted). "In the context of an insurance dispute, a declaratory judgment action may be ripe even if the insured has not yet incurred any liability." *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 262 (S.D.N.Y. 2010); *see also Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y.), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013) ("There is no *per se* rule, however, that all declaratory judgment actions brought to establish a duty to indemnify are premature during the pendency of an underlying action."). "[L]itigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." *Johnson v. Ironshore Specialty Ins. Co.*, No. 21-CV-03262 (GHW), 2022 WL 912973, at *5 (S.D.N.Y. Mar. 28, 2022) (internal citation omitted). "That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should focus on the practical likelihood that the contingencies will occur." *Id*. (internal citation omitted). "Thus, where liability is contingent, courts in this circuit traditionally examine the 'practical likelihood' that there will be some type of settlement or judgment against the insurer . . . the 'practical likelihood' standard applies in an action between an insured and its excess insurer, even where primary coverage has not been exhausted." *Fed. Ins. Co.*, 758 F.

Supp. 2d at 262 (collecting cases); *see also Harleysville Worcester Ins. Co. v. Consigli & Assocs., LLC*, No. 21-CV-934 (PAE), 2023 WL 4684652, at *10 (S.D.N.Y. July 21, 2023) (internal citation and quotation marks omitted) ("Indeed, courts in this circuit commonly find insurance coverage disputes ripe for adjudication before the insured has incurred any liability, as it is sufficient for a district court to find some practical likelihood that there will be some type of settlement or judgment against the insurer.").

That the Sentinel Policy has not yet been exhausted does not preclude a declaratory judgment as to priority of coverage if there is a practical likelihood that the Sentinel Policy limits – $1,000,000, *see* ECF Nos. 37-14 and 37-16 – will be reached. *See E.R. Squibb*, 241 F.3d 154 at 177 (assessing the "practical likelihood" that excess carriers' policies would be reached in determining whether an actual controversy was ripe for declaratory judgment). Neither party has directed the Court to facts in the record from which the Court may ascertain whether there is a practical likelihood that the Lopez Action will cause these limits to be reached, thereby activating the contingent liability of Zurich and/or Scottsdale, the excess insurers, and thus engendering an actual controversy as to the priority of coverage between the two. There also appears to be no information in the record about what amount, if any, has been paid out to cover the Lopez Action and whether defendants in that action have viable defenses to liability. *See Fed. Ins. Co.*, 758 F. Supp. 2d at 262. Thus, Zurich has not at this time satisfied its burden to show that the Court has jurisdiction to render declaratory judgment with respect to priority of coverage.

Moreover, the priority of coverage analysis, which begins with the "other insurance" provisions, would hardly get off the ground where Zurich does not even attempt to address Scottsdale's argument with respect to proximate cause. The Scottsdale Policy provides that it is

excess to all other insurance except with respect to liability because of "'injury or damage' caused, in whole or in part, by" Delco's ongoing operations or work. ECF No. 51 ¶ 45. The New York Court of Appeals has interpreted the phrase "caused, in whole or in part" to require proximate causation. *Burlington v. NYC Transit Authority*, 79 N.E.3d 477, 481–84 (2017). Even if the Court attempted to undertake the priority of coverage analysis, it would be immediately stopped in its tracks where Zurich, the party seeking declaratory judgment, provides no argument as to proximate cause or why the foregoing exception in the Scottsdale Policy applies here.

Accordingly, the Court denies summary judgment with respect to priority of coverage without prejudice.

## IV.     Declaratory Judgment is Appropriate

There is no doubt that the parties' dispute over whether LM and 412 qualify as additional insureds, and whether the Wrap-Up Exclusion applies, are active controversies. The Court finds that declaratory judgment with respect to these issues is appropriate because it resolves issues in controversy and offers the parties significant relief from uncertainty. *See Dow Jones*, 346 F.3d at 359. As previously stated, there is no actual controversy ripe for judgment with respect to: (1) attorneys' fees and costs; (2) Triton's status as an additional insured under the Scottsdale Policy; and (3) priority of coverage at this juncture.

## CONCLUSION

For the reasons set forth herein, Scottsdale's motion for summary judgment is DENIED and Zurich's motion for summary judgment is GRANTED in part and DENIED in part. Declaratory judgment is entered in favor of Zurich with respect to whether LM and 412 qualify as additional insureds and whether the Wrap-Up Exclusion applies. The Court DECLARES that (1) LM Legacy Group, LLC and 412 W 15 Lessee, L.P. qualify as additional insureds under the

Scottsdale Policy (ECF No. 39-8) and (2) Scottsdale is not entitled to rely on the Wrap-Up

Exclusion in the Scottsdale Policy (ECF No. 39-8) to disclaim coverage of LM Legacy Group,

LLC and 412 W 15 Lessee, L.P.

The parties are ORDERED to meet and confer regarding settlement and file a joint status

letter with the Court no later than **April 8, 2024**. The letter shall confirm that the parties

conferred regarding settlement and state whether all parties consent to mediation or a settlement

conference before Magistrate Judge Cave. If the parties agree that settlement discussions are not

and would not be fruitful at this time, the letter shall state the parties' proposed briefing schedule

regarding priority of coverage.

The Clerk of Court is directed to terminate ECF Nos. 32 and 39.

Dated:  March 15, 2024
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge